NELSON CHAMBERLAIN, RESPONDENT, *v.* JOHN B. REED, APPELLANT.

*Division fences — maintenance and removal thereof — chap.* 540 *of* 1866, *and chap.* 635 *of* 1871.

Under the provisions of the statutes relating to the maintenance and removal of division fences (chap. 540 of 1866, and chap. 635 of 1871), each owner, where the lands are not wholly cleared or improved. is bound to maintain his proportion of the division fence so far as he uses it, that is, so far as it serves to fence any of his lands which are inclosed, whether cleared or improved or

not; but if, before he has contributed to the division fence or after he has built a portion of it, he chooses to let a part of his land lie open, and remove that part of the fence adjoining it, he may do so upon procuring the certificate of the fence viewers to that effect.

It is not necessary that the whole of the fence be removed, a portion may be removed and the remainder left. But in such case, the party removing the fence must build, pay for, or maintain, as the case may be, his proportion of such part of the division fence as he continues to use for the purpose of inclosing any part of his land.

Where, by an agreement between the adjoining owners, specific portions of the division fence have been assigned to each to build and maintain, either party, by applying under the statute for leave to remove a portion of such fence, which portion he was by the agreement bound to maintain, thereby rescinds such agreement, and the other owner may then proceed *de novo* to have the remainder of the fence apportioned between them.

Where the fence removed was in a decayed and ruinous condition, and in places was completely broken down, so as to afford no protection to plaintiff's adjoining land, *held*, that defendant did not waive the benefit of the fence viewers' certificate by waiting until after the first of April before removing it, though the case would have been different had the fence been a substantial one, protecting plaintiff's land.

APPEAL from a judgment of the Monroe County Court reversing a justice's judgment in favor of the defendant.

The action was brought to recover the cost of repairing a part of defendant's portion of the division fence on the line between adjoining lands of the respective parties, the defendant having neglected, after due notice, to repair the same. A part only of the lands on each side of the division fence was cleared and improved, and the portion of the fence in question was opposite land of the defendant which was not cleared or improved. The defense was that the defendant had permission from the fence-viewers to remove that portion of his fence, and let his wood land lie open.

The notice to the plaintiff, under the statute, was to the effect that the defendant would apply to the fence viewers "for permission to remove my part of said division fence, * * * being on the north side of my unimproved timber and wood land, and on the south side of the land or farm on which you reside." The certificate of the fence viewers was to the effect that they "having viewed and examined the premises and fences in said notice mentioned and referred to, * * * do agree and decide the said John Reed may, with propriety, remove the part and portion of

such fences belonging to him to make and keep in repair; his said land being wholly unimproved."

*H. R. Selden*, for the appellant.

*W. F. Cogswell*, for the respondent.

SMITH, J.:

It appears, from the opinion of the county judge, that the judgment of the justice was reversed on the ground that the certificate of the fence viewers, upon which the defense rested, was void for want of jurisdiction. That conclusion was reached by holding that the certificate permitted the defendant to remove all of that part of the entire division fence between the parties which it belonged to him to keep in repair, although the notice, from which they derived their jurisdiction under the statute, limited them to that portion of the fence which was on the north side of Reed's unimproved timber land, and although a considerable portion of the fence so permitted to be removed ran through cleared and improved land. We think the certificate does not bear that construction. The certificate was annexed to the written notice of application which the defendant had caused to be served upon the plaintiff, and by its terms was in pursuance of such notice, to which it made special reference. The notice described the fence which the defendant asked permission to remove, as being on the north side of his unimproved timber and wood-land. It seems to us that the certificate, read in connection with the notice, clearly imports that the part of the fence which the defendant was permitted to remove was that part which adjoined his wood-land. We are of the opinion that the reversal of the judgment was not warranted upon the ground above stated.

It is now contended, however, by the counsel for the respondent, that the division fence between the lands of the parties is a unit, as each party is bound to maintain his proportion, and a certificate which allows one party to throw open a part of his lands to the public, and impose upon the other the burden of maintaining the remainder of the division fence, does not comply with the statute. The entire division fence between the parties is 278 rods

in length, running east and west. By an arrangement which is said to have existed between the parties for over twenty years, the first thirty rods of the fence on the west end has been maintained by Chamberlain, the next thirty by Reed, the next 118 by Chamberlain, and the last 110 rods on the east end by Reed. The east 110 rods is the portion which the certificate permits the defendant to remove. If the certificate is valid and the existing arrangement is to continue in force, as to the remaining portion of the fence (178 rods), the plaintiff will be obliged to support 148 rods of it, in addition to the 110 rods which the defendant is permitted to remove, and which the plaintiff must keep up, unless he lets his adjoining lands lie open. It is not to be supposed that the statute was intended to work out results so inequitable. What, then, is the meaning of the statute? May one of two or more adjoining tenants be permitted to remove a part only of his division fence, or must he remove the whole or none? The question appears to be new, and the meaning of the statute is not free from doubt.

At common law, one tenant could not compel the tenant of an adjoining close to make a division fence, except by agreement or prescription, and then the remedy was by action on such agreement or prescription. (*Holladay* v. *Marsh*, 3 Wend., 145.) Under the successive statutes in this State on the subject, a tenant who chose to let his lands lie open could not be compelled to make his proportion of a division fence where none had been built; until the amendment adopted in 1866 (L. 1866, ch. 540), which provided that each of two or more persons, having lands adjoining should make and maintain a just and equal proportion of the division fence between them, in all cases where one-half or more of each of said adjoining lands were cleared or improved. (§ 1.) By that amendment, in all other cases, the owner could let his land lie open, if he chose; and if he did so, he could not be compelled to build a fence. But if he afterwards inclosed his land, he was required to refund to the owner of the adjoining land a just proportion of the value at that time of any division fence that had been made and maintained by such adjoining owner, or to build his proportion of such division fence. (§ 2.) And even if he chose to let his land lie open, if one-half or more of it was cleared or improved, he was required to refund to the owner of the adjoining

land a just proportion of the value at the time said amendment took effect of any division fence that had been made and maintained by such adjoining owner, or to build his proportion of such fence. (§ 3.) Those provisions related to the case of a tenant who had not contributed to the making or maintenance of a division fence. If after he had made his proportion of the division fence, the tenant chose to remove his fence and let his lands lie open, he could do so, provided his lands were not one-half or more cleared or improved, on complying with the requirements of the statute, and obtaining a determination of the fence viewers that he could do so with propriety. (§ 5.) By an amendment adopted in 1871 (L. 1871, ch., 635), the cases where persons having lands adjoining could be compelled to make and maintain a division fence, were reduced to those in which each of the adjoining lands was wholly cleared or improved, and the several provisions of the act of 1866 above referred to were changed accordingly, and in that shape are now in force.

There is nothing in those provisions having a very direct bearing upon the question before us, but it seems evident that, in some instances where the statute speaks of "the land" of a tenant, it does not necessarily mean the whole of his land, and where it speaks of the " division fence," it does not mean the whole of such fence. Take, for example, the provision that an owner who has let his land lie open after the adjoining owner has built a division fence may subsequently inclose it, provided he pays for, or builds his proportion of the fence. May he not inclose a part only of his land and leave the rest open, and so be liable only for his proportion of such part of the fence as adjoins the land so inclosed? To compel him to pay for fencing that part of his land which he does not wish to inclose would be unjust to him, and more than just to the adjoining owner. We are inclined to think the policy of the statute is, as to lands not wholly cleared or improved, that each owner shall maintain his proportion of the division fence so far as he uses it; that is, so far as it serves to fence his lands which are inclosed, whether cleared or improved or not; but that if before he has contributed to the division fence, he chooses to let a part of his lands lie open, or if, after he has built a portion of it, he then chooses to let a part of his land lie

open, and to remove that part of the division fence adjoining it, he may do it on complying with the statute. But in either case, he must build, pay for, or maintain, as the case may be, his proportion of such part of the division fence as he continues to use for the purpose of inclosing any part of his land. The policy of the statute thus construed is in harmony with its provisions respecting a subdivision of division fences, whenever a transfer of title to adjoining lands or any part of them interferes with or affects the division fences between the adjoining owners. (L. 1866, chap. 540, § 4; L. 1871, chap. 635, § 3.)

If, however, the construction which we have given to the statute were to work such injustice to the respondent as his counsel apprehends, we would be loath to adopt it, except upon clearer language than that contained in the statute under consideration. But we are of the opinion that no such result need follow. It seems to us that the action of the defendant in removing the portion of the fence adjoining his wood-land and in relieving himself, through the determination of the fence viewers rendered on his application, from the duty of further maintaining it, must be regarded as a rescission on his part of the previously existing arrangement between him and the plaintiff respecting the proportions of the division fence to be maintained by them respectively, and that there is no longer any subsisting agreement between them on that subject. If this view is correct, the plaintiff may proceed de novo to have the division fence apportioned, and if a dispute arises between him and the defendant as to the proportion to be maintained by each, the fence viewers may be called in to settle it. (1 R. S., 353, § 33.)

It is further insisted by the respondent's counsel that the defendant waived the benefit of the fence-viewers' certificate by not removing his fence before the first of April following. It appears in evidence that, for years before the application was made to the fence viewers, the fence adjoining the defendant's wood-land was in a decayed and ruinous condition, and in several places was so completely broken down and destroyed as to afford no protection to the plaintiff's lands adjoining. If there had been a substantial fence, the removal of which would have exposed the plaintiff's land to inroads from which the fence had previously

protected it, the case would have been entirely different. Such a fence the defendant would have had no right to remove after the first of April, and it might be said with great force that by omitting to remove it before that time, he had waived his right to take it away. But in the actual circumstances of the case, the mere omission of the defendant to remove the decayed fragments of the ancient fence was no evidence of an intention on his part to continue to maintain the fence, and it furnishes no implication of a waiver of his right to remove it.

We think, therefore, that the defendant was under no obligation to maintain the portion of the fence in question at the time when the plaintiff repaired it, and that he had a substantial defense to the plaintiff's action.

We have examined the several exceptions taken on the part of the respondent to rulings of the justice upon questions of evidence, but they point to no material errors.

The judgment of the County Court should be reversed and that of the justice affirmed, with costs of the appeal in the County Court, as well as of this appeal, to the defendant.

Present — MULLIN, P. J., TALCOTT and SMITH, JJ.

Judgment of the County Court reversed, and that of the justice affirmed.